IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES CUTHBERTSON, | ) | CASE NO. 1:08 cv 458 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff James Cuthbertson's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

### I. PROCEDURAL HISTORY

On March 1, 2004, Plaintiff filed an application for Supplemental Security Income benefits, alleging a disability onset date of May 19, 1998 due to limitations related to major depressive disorder with psychotic features, hypertension, and hepatitis C. Plaintiff's disability onset date for purposes of Title XVI is March 1, 2004 (Tr. 18). On July 13, 2007, Administrative Law Judge ("ALJ") Jeffrey Hatfield determined Plaintiff had the residual

functional capacity ("RFC") to perform light work and, therefore, was not disabled (Tr. 20-21, 28). On appeal, Plaintiff claims that the ALJ erred by: (1) failing to give adequate weight to the opinions of Plaintiff's treating sources in determining Plaintiff's RFC; and (2) relying on VE testimony in response to an inaccurate hypothetical in determining that Plaintiff is not disabled.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Born on April 30, 1953 (age 54 at the time of the ALJ's determination), Plaintiff is an "individual closely approaching advanced age." *See* 20 C.F.R. §§404.1563, 416. 963. Plaintiff last completed the 10th grade and has a minimal and remote work history as a school janitor from 1986 to 1988, a factory worker from 1990 to 1991, and as a temporary employee at a battery factory in 1994 and 1995 (Tr. 111). Plaintiff also has a history of criminal incarceration (Tr. 418, 431-32).

### B. Medical Evidence

Plaintiff received treatment from Northcoast Correctional Treatment Facility from August 21, 2002 until February 8, 2003 — the period of his incarceration (Tr. 166-219). A mental status examination revealed that he was manipulative but had satisfactory concentration memory and speech, full orientation, and average intellectual functioning (Tr. 211). He had a history of injuring himself (Tr. 209). Plaintiff stated that his symptoms improved when he took his medication (Tr. 184). He reported using heroin, cocaine, and alcohol prior to his incarceration (Id.). Dr. Mark Pagano noted that Plaintiff had mood disorder and memory/cognitive disorder (Tr. 183).

On April 23, 2003, Plaintiff presented to MetroHealth with complaints of depression, hypertension and skin problems involving his left foot (Tr. 221-22). Plaintiff was referred for mental health counseling and to dermatology.

In January 2004, Plaintiff began treatment at Murtis Taylor Multi-Services Center. Counseling records from Murtis Taylor reflect that a nurse, Grace Herwig, M.S.N., diagnosed Plaintiff with depression in January 2004 (Tr. 233). Plaintiff reported some auditory hallucinations in February 2004, but he also noted that his sleep and appetite had gotten better with treatment (Tr. 231). Plaintiff continued to report auditory hallucinations on March 14, 2004 and April 24, 2004 (Tr. 230, 275). However, in April 2004, Plaintiff told Ms. Herwig that he had a girlfriend (Tr. 297). In December 2004, Plaintiff returned to treatment at Murtis Taylor after a six-month long absence, complaining of worsening depression and hallucinations without treatment (294). Plaintiff reported using illicit drugs during this period but claims to have stopped in October or November 2004 (Tr. 292).

On May 16, 2004, Dr. Wilfredo Paras examined Plaintiff at the request of the Social Security Administration (Tr. 235-43). Dr. Paras diagnosed Plaintiff with probable major depression, requiring good psychiatric follow-up; a history of left shoulder pain, remote with current stiffness; hypertension; a cystic mass on the left anterolateral side of the neck; hepatitis C, asymptomatic; and elevated blood sugar (Tr. 237). Dr. Paras concluded that Plaintiff's ability to perform work-related physical activities is limited by his chronic depression and left shoulder pain (Id.).

On May 25, 2004, Sally Felker, Ph.D., a consulting psychologist, examined Plaintiff and evaluated his mental condition (Tr. 251-56). During Dr. Felker's examination, Plaintiff was

neatly dressed, had good hygiene and grooming, was cooperative, and did not exhibit impulse problems (Tr. 252).  He demonstrated a "very limited" level of motivation, and his concentration was fair (Id.).  He denied having auditory or visual hallucinations during the evaluation (Id.).  He reported that he does chores—or "heavier work"—at his grandmother's house in exchange for a place to live (Tr. 253).  Intelligence testing showed that Plaintiff has a full scale intelligence quotient (IQ) of 86, a verbal IQ of 88, and a performance IQ of 85 (Id.).  Dr. Felker characterized these results as representing low average intelligence (Id.).  Memory testing showed that Plaintiff has low average memory, and reading tests showed that Plaintiff reads at an eighth grade level (Tr. 254).  Dr. Felker diagnosed Plaintiff as having depression and antisocial behavior (Id.).

Dr. Felker completed a mental residual functional capacity assessment, indicating that Plaintiff's ability to concentrate and attend to tasks is mildly impaired; his ability to understand and follow instructions is not impaired; his ability to carry out routine tasks is mildly compromised; his ability to related to others is moderately to substantially impaired; and his ability to relate to work peers and supervisors is mildly to moderately limited (Tr. 254).

On July 11, 2004, Joanne Coyle Ph.D., a state agency psychologist, reviewed Plaintiff's medical records and found that Plaintiff can perform work involving little contact with others—especially the general public—and can handle simple, routine tasks (Tr. 259).  Dr. Coyle also completed psychiatric review technique form (PRTF) for Plaintiff (Tr. 270).  In the PRTF, Dr. Coyle indicated that Plaintiff has the following "B" criteria mental impairment listings: mild restriction of activities of daily living; moderate difficulty in maintaining social functioning; mild difficulty in maintaining concentration, persistence and pace; and no episodes of decompensation of extended duration (Id.).  Dr. Coyle further indicated that Plaintiff did not

show any of the "C" criteria mental impairment listings (Tr. 271). Rod Coffman, Ph.D., reviewed Plaintiff's medical records and concurred with Dr. Coyle's conclusions (Tr. 259).

In June 2005, Ms. Herwig reported that Plaintiff had failed to show up for treatment for approximately four months (Tr. 315). After restarting his medication regimen, Plaintiff reported feeling better and that his symptoms had improved (Id.). In August 2005, Plaintiff denied experiencing hallucinations while on medication and reported that he was doing well on his medications (Tr. 313-14)

In 2006 and 2007, Plaintiff came to Murtis Taylor sporadically for treatment (Tr. 368-73; 380-88). He reported that he did not have any health insurance (Tr. 373). Plaintiff acknowledged that he had not been complying with his medication regimen and admitted that, when used as prescribed, the medications helped his condition (Tr. 370; 372-73; 387-88).

In 2007, Lois Hart, M.S.N., C.N.S., a nurse with Murtis Taylor, completed a mental capacity assessment of Plaintiff's mental functioning (Tr. 365-66). Ms. Hart indicated that Plaintiff's abilities in many areas of mental functioning are "poor" or "fair" (Id.). Specifically, Ms. Hart opined that Plaintiff has "poor" to "no" ability to make occupational adjustments and mostly "fair" to "poor/no" ability to make personal and social adjustments (Id.).

### C. Hearing Testimony

Melvyn Ross, M.D., reviewed Plaintiff's medical records and testified as a medical expert ("ME") at Plaintiff's hearing (Tr. 428-42). The ME is board-certified in psychiatry (Tr. 429). He testified that Plaintiff's impairments did not meet or equal the criteria in any listings at 20 C.F.R. Pt. 404, Suppt. P, App. 1 (Tr. 439-40). The ME testified that Plaintiff's mental impairments restrict him to work that involves only minimal exposure to co-workers, supervisors

and the general public; does not require confrontation, arbitration or negotiation; and requires only simple, repetitive tasks (Tr. 439). The ME further testified that if Plaintiff consistently stayed on his medication, he would function better (Tr. 440). He noted that Plaintiff's symptoms are exacerbated demonstrably when Plaintiff fails to take his medications regularly (Id.).

Lynn Smith testified as a vocational expert ("VE") at Plaintiff's hearing. The ALJ asked the VE whether a person able to lift 20 pounds occasionally and 10 pounds frequently; able to stand, sit and walk six hours in an eight hour day; limited to only occasional crouching and reaching overhead on the left side; restricted from working around hazardous machinery and at unprotected heights; limited to simple, routine, low-stress tasks; limited to only occasional, superficial interaction with the public and co-workers, with no confrontation, arbitration or negotiation could do any of Plaintiff's past relevant work. (Tr. 444-45). The VE responded that such a person could not. (Tr. 445). However, the VE testified that such a person could perform a substantial number of other jobs in the national economy. (Id.). Those jobs include: (1) office cleaner, with 3,000 jobs in Northeast Ohio, 30,000 in the state of Ohio, and 887,000 jobs nationwide; (2) mail clerk, with 1,400 jobs in Northeast Ohio, 3,200 in the state, and 110,000 nationally; and (3) clothes marker, with 1,700 in Northeast Ohio, 150,000 in the state, and 4.2 million nationally (Tr. 445-46). The VE further testified that a hypothetical individual with all of the above limitations who had to miss two to three days per month would not be able to maintain employment (Tr.446-47).

### III. DISABILITY STANDARD

A claimant is entitled to receive Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381.

A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

## IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence,  regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all evidence in the record in making its decision, whether or not such evidence was cited in the Commissioner's

final decision. See *Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

### A. Whether the ALJ Erred in Formulating Plaintiff's RFC by Failing to Evaluate Properly the Opinions of His Treating Sources

Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC by failing to evaluate fully the opinions of Plaintiff's treating sources at Murtis Taylor. In particular, Plaintiff claims that the ALJ failed to consider adequately an assessment of Plaintiff's mental functioning that Ms. Hart, a nurse with Murtis Taylor, completed on February 12, 2007.

The Court first addresses whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence. An ALJ may rely on the opinion of a medical expert to resolve conflicts in the medical evidence. See *Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *Schumer v. Comm'r of Soc. Sec.*, 109 Fed. Appx. 97, 101 (6th Cir. 2004). In this case, there is some conflict in the evidence over the extent of Plaintiff's mental functioning limitations — particularly those involving Plaintiff's ability to deal with other people. Some of the opinion evidence tends to show that Plaintiff is only mildly to moderately restricted in his ability to deal with people. Dr. Coyle, a state agency reviewing psychologist, opined that Plaintiff:

> can adequately get along with others but does tend to avoid others. Jobs with little contact with others, especially the general public, would be best. He can handle the stress associated with simple routine tasks with no difficulty. He would, again, have mild to moderate difficulty handling the stress associated with more complex, competitive work tasks

(Tr. 259). Dr. Coffman, another state agency reviewing psychologist, reviewed and concurred with Dr. Coyle's assessment (Tr. 260). However, other opinion evidence suggests that Plaintiff

is more limited in his ability to deal with people. Ms. Hart, a nurse at Murtis Taylor, completed an assessment of Plaintiff's mental health capacity in 2007 (Tr. 365-66). She opined that Plaintiff's intellectual functioning and ability to make occupational adjustments are either "poor"/non-existent or "fair" in every category. (Id.). She also opined that Plaintiff's ability to behave in an emotionally stable manner and ability to relate predictably in social settings are either fair or poor and noted that Plaintiff has a "quick temper." (Id.). Another mental capacity assessment from Murtis Taylor reflects that Plaintiff's intellectual functioning and ability to make occupational adjustments are "poor"/non-existent or "fair" in most categories (Tr. 286). This form is incomplete and does not identify who filled it out. Dr. Felker, an examining psychologist, gave a mixed review of Plaintiff's mental functioning limitations. In her assessment, Dr. Felker opined that Plaintiff's ability to relate to others is moderately to substantially impaired; however, she opined in the same report that Plaintiff's ability to relate to work peers and supervisors is only mildly to moderately limited (Tr. 254).

Dr. Ross reviewed the record and served as a medical expert at Plaintiff's hearing in 2007. He opined that Plaintiff retains the mental capacity for work involving simple, repetitive tasks; not involving more than minimal exposure to co-workers, supervisors and the general public; and not requiring confrontation, arbitration or negotiation (Tr. 439).

The ALJ determined that Plaintiff has the residual functional capacity to perform light work with the following qualifications: limited to lifting no more than 10 pounds frequently and 20 pounds only occasionally; no standing or sitting for more than six hours in an eight hour work day; no work requiring crouching or reaching overhead with the left side more than occasionally; no work around hazardous machinery or unprotected heights (in part because of Plaintiff's

medications and history of poly-substance abuse); no work requiring more than simple, routine, repetitive tasks; no more than low stress work (i.e., no more than occasional decision-making, changes in work setting or exercise of judgment); no production rate pace work; no work involving more than occasional, superficial interaction with the public and co-workers; and no work requiring confrontation, arbitration or negotiation.

The ALJ's assessment of Plaintiff's RFC — especially the portions involving Plaintiff's capacity for dealing with co-workers and the public — mirrors Dr. Ross' assessment of Plaintiff's capabilities. Based on the opinions of Dr. Coyle and Dr. Coffman, there is substantial evidence in the record to support Dr. Ross' assessment, and the ALJ was entitled to rely on Dr. Ross' opinion to resolve the conflicts in the evidence surrounding the extent of Plaintiff's ability to deal with people. Thus, to the extent Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence, such contention is without merit.

The Court next addresses whether the ALJ failed to properly assess the opinions of his mental health professionals at Murtis Taylor. Social Security Ruling 06-03p identifies nurses not as "acceptable medical sources" but as "other sources." "Information from these 'other sources' cannot establish the existence of a medically determinable impairment." S.S.R. 06-03p. Only 'acceptable medical source[s]' can do so. "However, information from such other sources may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* "The weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors . . . ." *Id.* Generally, the opinions of "acceptable medical sources"

should be entitled to more weight than the opinions of "other" medical sources because "'acceptable medical sources' are the most qualified health care professionals." *Id.* However, in some cases, the opinion of a medical source who is not an "acceptable medical source" may be entitled to more weight than that of an "acceptable medical source" — if for instance, the other medical source "has seen the individual more often than the [acceptable] treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.*

The ALJ should evaluate the opinions of "other sources" using the applicable factors listed in S.S.R. 06-03p, including how long the source has known the individual, how consistent the opinion is with the other evidence, and how well the source explains the opinion. *Cruse v. Commr. of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). But, "[n]ot every factor for weighing opinion evidence will apply in every case." S.S.R. 06-03p. Each case must be evaluated on an individual basis. *Id.* Significantly, S.S.R. 06-03p notes that:

> [a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions for these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.*

Plaintiff claims that the ALJ failed to adhere to the requirements of S.S.R. 06-03p for evaluating the opinions of the following people: Ms. Hart, Ms. Alaimo, Ms. Herwig and Ms. Root — all of whom are nurses. He also claims that the ALJ should have evaluated more closely the opinions of Dr. Friedell, an M.D., and Dr. DeHelian, a Ph.D. — both of whom are "acceptable medical sources" within the meaning of the Social Security Regulations. All of the

11

professionals listed above provided some information — in the way of progress notes or the like — pertaining to Plaintiff's condition; however, it appears that the only one who provided any *opinion* evidence regarding Plaintiff's functional capacity was Ms. Hart, a nurse. As noted above, the record also contains an incomplete form filled out by an unidentified author, which constitutes some opinion evidence regarding the extent of Plaintiff's mental functioning impairments.

The ALJ directly addressed Ms. Hart's assessment and appears to have addressed the anonymous assessment in his determination as well. He noted that "[t]wo mental health counselors completed a mental capacity evaluation in 2007, finding 'poor' to 'no' ability to make occupational adjustments and mostly 'fair' to 'poor/no' ability to make personal and social adjustments" (Tr. 25). The ALJ's citation to the record here indicates that he is referring to the assessment that Ms. Hart completed on February 12, 2007. Although the ALJ does not cite directly to the incomplete, anonymous report featured on page 286 of the record, presumably he intends to refer to it as well since the record contains no other opinion evidence from any of Plaintiff's "mental health counselors" or any of the other health professionals at Murtis Taylor. As noted above, it is unclear whether a "mental health counselor" in fact filled out this form. Thus, the Court cannot state with certainty whether the form's author was an "acceptable medical source" or an "other" treating source under Social Security law. Plaintiff does not seriously contest the ALJ's treatment of this form or argue that the ALJ erred in assuming that its author was an "other" treating source. Moreover, given the form's limited probative value — it is incomplete, consists of little more than half a page, and does not indicate who filled it out —

and the ALJ's discussion of it in his analysis, the Court finds that any error on the part of the ALJ in treating this form's author as an "other" treating source was harmless.

The ALJ then explained that he was giving less weight to these opinions essentially for two reasons: first, because they came from "two mental health counselors" who are not acceptable medical sources within the meaning of the regulations; and second, because "[t]he evidence in the record strongly indicates that the claimant does much better when he is on medication . . . . [and] the clinical findings regarding the claimant's state when he is compliant reveals that he is not as limited as these counselors suggest" (Id.). The ALJ also noted later in his decision that "the Social Security Regulations prohibit a finding that a claimant is 'disabled' if he or she fails to follow prescribed treatment without 'good reason' . . . . [and] I do not find that the claimant has established a good reason as defined in 20 CFR 404(c) and 416.930(c)" (Tr. 26).

An ALJ cannot satisfy the requirements of SSR 06-03p simply by discounting an "other" medical source opinion on the grounds that it did not come from an "acceptable medical source." See Cruse, 502 F.3d at 541. Thus, if the ALJ in this case had stated that he was discounting the opinions at issue merely because they came from "two mental health counselors," his reasoning would not have passed muster under S.S.R. 06-03p. However, the ALJ also stated that he was discounting the mental health counselors' opinions because the evidence shows that Plaintiff improves when he is compliant with his medication regimen — a phenomenon the opinions do not appear to reflect. Although the ALJ did not specifically discuss the S.S.R. 06-03p factors in his analysis, S.S.R. 06-03p does not require that the ALJ set out and apply each and every factor to the facts of the case. In fact, S.S.R. 06-03p plainly notes that there is a discrepancy between

13

what an ALJ must consider and what the text of his determination must contain. S.S.R. 06-03p provides that the ALJ's determination simply must "explain the weight given to opinions for these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." The ALJ's decision indicates clearly that the ALJ was assigning less weight to the counselors' opinions and gives a good reason for doing so — specifically, that they do not seem to take into account Plaintiff's improvement with regular medication. This reasoning satisfies the general purpose of S.S.R. 06-03p, which is to ensure that the claimant and subsequent reviewers can understand why the ALJ rejected particular opinion evidence from sources other than "acceptable treating sources." Therefore, the Court finds that the ALJ has discharged his burden under S.S.R. 06-03p.

### B.  Whether the ALJ Erred by Relying on VE Testimony in Response to an Inaccurate Hypothetical

Plaintiff argues that the ALJ should have given more credit to Dr. Felker's assessment that Plaintiff is moderately to substantially impaired in his ability to relate to others and deal with the general public and to Dr. Ross' opinion that Plaintiff should be restricted to minimal exposure to co-workers and supervisors and the public especially in formulating his hypothetical to the VE. Plaintiff claims that this opinion evidence shows that Plaintiff's limitations exceed those included in the ALJ's hypothetical, which described an individual limited only to occasional, superficial interaction with the public and co-workers.

Once it is determined a claimant does not have the RFC to perform his past relevant work, the burden shifts to the Commissioner to show the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy. *See Foster v.*

*Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Anthony v. Astrue*, 266 Fed. Appx. 451, 460 (6th Cir. 2008) (citing *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)). "To meet this burden, there must be a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The testimony of a vocational expert in response to a hypothetical question may serve as substantial evidence of a claimant's vocational qualifications to perform certain jobs. *See id.* However, the hypothetical question posed to a vocational expert must accurately portray a claimant's physical and mental state. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Should the hypothetical fail to accurately describe a claimant's physical and mental impairments, the defect is fatal to both the vocational expert's testimony and the ALJ's reliance upon that testimony. *See id.*

The ALJ in this case found that Plaintiff has no past relevant work; thus, the question of whether Plaintiff can perform his past relevant work is moot (Tr. 26). However, the ALJ found, based on the VE's testimony, that Plaintiff can perform a number of other jobs that exist in significant numbers in the national economy. The ALJ asked the VE whether a hypothetical person who is able to lift 20 pounds occasionally and 10 pounds frequently; able to stand, sit and walk six hours in an eight hour period; limited to occasional crouching; limited to occasional reaching overhead on the left side; restricted from working around hazardous machinery and unprotected heights; limited to simple, routine tasks; limited to low stress work with only occasional decision-making, changes in work setting and exercises of judgment; and restricted from production rate pace work; and limited to only occasional, superficial interaction with the public and co-workers; and restricted from work involving arbitration, negotiation or

confrontation (Tr. 444-45). The VE responded that such a person could perform work as an office cleaner — with 3,000 jobs in the Northeast Ohio, 30,000 in the state of Ohio, and 887,000 nationally; as a mail clerk — with 1,400 jobs in Northeast Ohio, 3,200 in the state, and 110,000 nationally; or as a clothes marker — with 1,700 jobs in Northeast Ohio, 150,000 in the state, and 4.2 million nationally (Tr. 445-46). The ALJ relied on this testimony in determining that Plaintiff is not disabled.

The Court finds meritless Plaintiff's claim that the ALJ erred by failing to give more credit to the portion of Dr. Felker's assessment indicating that Plaintiff is moderately to substantially impaired in his ability to relate to others. The ALJ found this portion of Dr. Felker's opinion to be inconsistent with another portion of the same report as well as with the record as a whole. There is substantial evidence in the record to support the ALJ's decision; specifically, the opinions of Dr. Coyle, Dr. Coffman and Dr. Ross tend to show that Plaintiff's limitations in dealing with other people are not as pronounced as this portion of Dr. Felker's opinion might suggest. Thus, the ALJ's decision not to include this portion of Dr. Felker's report in his hypothetical to the VE was reasonable and supported by substantial evidence.

Plaintiff's argument that the ALJ did not reasonably account for Dr. Ross' opinion is also meritless and seems largely to be a quibble over semantics. Dr. Ross opined that Plaintiff is limited to minimal interaction with supervisors, co-workers and the public with no arbitration, confrontation or negotiation (Tr. 439). The ALJ's hypothetical limited the individual to "occasional interaction with both [the] public and coworkers" but only "superficial nonconfrontational [interaction with] no arbitration and no negotiation" (Tr. 445). "Occasional" and "superficial" interaction is roughly congruent to "minimal interaction," and the ALJ's

hypothetical clearly accounts for Dr. Ross' restrictions regarding confrontation, negotiation, and arbitration. Thus, the Court finds that the ALJ reasonably accounted for Dr. Ross' opinion in his hypothetical.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: February 11, 2009.